UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANGELA DEDIVANOVIC                              :
                                                :
            Plaintiff,                          :
                                                :
    -against-                                   :   STATEMENT OF MATERIAL
                                                :      UNDISPUTED FACTS
                                                :
BUILDING SERVICE 32B-J PENSION                  :   05-CV-3458 (TMG)(MHD)
FUND                                            :
                                                :
            Defendant.                          :
-----------------------------------------------------------X

      Building Service 32BJ Pension Fund, referred to herein as the "Fund", by its attorneys, Raab, Sturm & Ganchrow, LLP, submits the following Statement of Material Undisputed Facts, pursuant to Local Rule 56.1(a) of the Rules of United States District Court for the Southern District of New York as follows:

1.      Angela Dedivanovic ("Dedivanovic") has brought the underlying action against the Fund pursuant to E.R.I.S.A. (29 U.S.C. 1132), alleging that the Fund violated Dedivanovic's rights under E.R.I.S.A. when the Fund denied her application and appeal for a total and permanent disability pension. (See Complaint, copy annexed as Exhibit "A" to the Affidavit of Peggy Napier (hereinafter referred to as "Napier Affidavit".)) In its answer, the Fund denied that it violated E.R.I.S.A. when it denied the application and appeal. (See, Exhibit "B" to Napier Affidavit.)

2.      The Pension Fund is a jointly administered benefit fund established pursuant to the Taft-Hartley Act, 29 U.S.C. 186. It is administered by an equal number of management and union trustees. (Napier Affidavit, par. 2)

3.      The Fund is governed by an Agreement and Declaration of Trust (Exhibit "C" to Napier Affidavit). The Trust defines its purpose as to provide and maintain a pension plan for the benefit of employees. (Exhibit "C", preamble) The Trust agreement empowers the Trustees as follows:

> In the administration of Trust, the Trustees are authorized and empowered, in their sole and absolute discretion...
>
> S. Except as otherwise provided herein, to establish such procedures, rules and regulations, not inconsistent with the provisions of this Agreement and the Plan, as shall be necessary to carry out the operation of the Plan and effectuate the purposes thereof.

(Exhibit "C", at Article Sixth, section "S").

4.      The Trustees are mandated and empowered to do all acts to accomplish the general objectives of maintaining the Fund in trust solely in the interests of the participants and beneficiaries for the exclusive purpose of (1) providing benefits to participants and beneficiaries; and (2) defraying reasonable expenses of administering the Fund. (Exhibit "C" at article Eleventh, Section "B").

5.      The Plan (Exhibit "D" to Napier Affidavit) sets forth, inter alia, the types of pension benefits provided and the criteria for qualification to benefits. The Plan provides for four types of pensions: a regular pension, an early retirement pension, a vested pension and a disability pension. In order to qualify for a disability pension, the applicant must meet the following criteria:

> (a)     becomes permanently and totally disabled (disability- the inability to work in any capacity) prior to attaining age 65...;
>
> (b)     has a least 120 or more months of Service Credit; and
>
> (c)     the disability commences while the Participant worked in Covered Employment.

(Exhibit "D", at Sections 4.09 and 410)

6. The Plan defines a "total and permanent disability" as:

> A Participant shall be deemed totally and permanently disabled if on the basis of medical evidence satisfactory to the Trustees, he or she is found to be totally and permanently unable, as a result of bodily injury or disease to engage in any further employment or gainful pursuit. The Trustees shall determine total and permanent disability and the entitlement to a Disability Pension hereunder based upon information submitted.

(Exhibit D, Section 4.11)

7. The Trustees have the absolute authority to require the applicant for disability pension to submit to physical examinations by physicians chosen by the Trustees. (Exhibit "D" Section 4.12)

8. The Trustees have full discretion in the interpretation and application of the terms of the Plan. Article 7.07 provides:

> The Trustees shall, subject to the requirements of the law, judge the standard of proof required in any case and the application and interpretation of the Plan, and decisions of the Trustees shall be final and binding on all parties.

9. It is noted that once a beneficiary becomes vested in the Plan, his or her rights to a normal retirement pension are nonforfeitable. (Exhibit "D", Section 7.11 and 7.12).

10. There is also a Summary Plan Description (SPD) (Exhibit "E" to Napier Affidavit), that summarizes the benefits that are more fully described in the Plan. In the context of the disability pension, the SPD, provides:

> Disability Pension
> Total and permanent disability is the inability to work in any capacity. If ... a participant becomes totally and permanently disabled while in covered employment, he/she may be eligible for a Disability Pension. The participant must have at least 120 months of service credit and must have the disability approved by the Fund. The amount of the Disability Pension

> will be 82% of the amount the participant would be entitle to
> at age 65 based upon years of service credit.

(Exhibit "E", page 9)

11. The SPD cautions that it is merely a brief summary of the most important provisions of the Plan. The SPD (Exhibit "E"), the Plan (Exhibit "D") and the Trust Agreement (Exhibit "C"), were all incorporated in a single booklet distributed to the beneficiaries. As such the SPD advises:

> Your rights to benefits will be governed by the Pension Plan which follows and the interpretations of the Board of Trustees.

(Napier Affidavit par. 11, Exhibit "E", page 19).

12. The Fund requires a fixed contribution by contributing employers. The Plan is set up to be actuarially grounded, with the contributing employers making the fixed contributions. As such, no employer, and particularly not the employer of any particular applicant for disability pension, can incur a direct or even indirect increased cost as a consequence of the granting of a disability pension. Nor will any contributing employer incur a financial benefit by the denial of a disability benefit. (Napier Affidavit par. 12)

13. Plaintiff in this action may assert a bias or conflict on the part of the Appeals Committee and the process under which it operates. In the context of a conflicted administrator, the following facts are provided. (Napier Affidavit par. 13)

14. No employee of the Fund is on an incentive program. All employees of the Fund who are responsible for administering the disability pension application process receive the same salaries regardless of whether a benefit is granted or denied. (Napier Affidavit par. 14)

15. The same applies to the independent medical examiners. They receive the same fee regardless of whether they find the applicant disabled or not. The same applies to the vocational assessment program. The fee paid to the company that provides vocational assessments is the same regardless

of the determination reached. (Napier Affidavit par. 15)

16. With regard to Ms. Dedivanovic's case, the following summary of the administrative record is provided. (Napier Affidavit par. 16)

17. On March 14, 2002, the Fund received from Dedivanovic an application for benefits dated March 1, 2002. (Exhibit "F" to Napier Affidavit) At the time of application Dedivanovic indicated that she was receiving benefits under Workers Compensation, but not receiving Social Security disability benefits. (Napier Affidavit par. 17)

18. After filing the application, Dedivanovic submitted an attending physician statement of Dr. Emmanuel Lambrakis dated May 10, 2002. The statement described that the symptoms of which Ms. Dedivanovic complained had commenced on June 19, 2000. Dr. Lambrakis had seen Dedivanovic three times per week beginning June 26, 2000 and continuing to May 10, 2002. Dr. Lambrakis described the extent of disability as total, for any occupation, as well as Dedivanovics' past or regular occupation, with a conclusion that she would never be able to return to work. (Report annexed as Exhibit "G" to Napier Affidavit par. 18)

19. Also submitted in support of the application were the following:

> a) Nov 10, 2000 MRI report by Dr. Javier Beltran of Sutton Place Imaging, with the impression of degenerative disc disease at L5-S1, with large central disc extrusion.
>
> b) February 2, 2001 Report by H.P.S. Medical
>
> c) Undated report by H.P.S. Medical signed by Dr. Lambrakis, based upon examination conducted on September 26, 2001.
>
> d) MRI Report of August 1, 2001 advising of the existence of reversal of lordotic curve compatible with muscle spasm. Also, reported was evidence of a moderated herniated disc at L5-51 level casing pressure effect on thecal sac.

      e)    March 13, 2001 Neurological consultation report of Dr. Paul Lerner.

      f)    January 18, 2002 report of Dr. Lambrakis.

      g)    February 2, 2002 award from Social Security for benefits retroactive to December 2000.

      h)    March 1, 2002 report from Dr. Lambrakis.

      I)    Motor Nerve Conduction report by Dr. Lerner dated April 12, 2002.

      j)    Social Security letter dated February 2, 2002.

(All annexed as Exhibit "H" to Napier Affidavit)

20. The Fund sent Dedivanovic for a physical examination by Dr. Peter Marchisello. Dr. Marchisello was on a panel of physicians used by the Fund to examine applicant's who apply for disability benefits from the Fund. (Napier Affidavit par. 20)

21. Dr. Marchisello is an independent physician and not an employee of the Funds. Dr. Marchisello was asked to conduct a comprehensive medical examination with ancillary tests if necessary to determine whether Plaintiff met the Plan's definition of totally disabled using the following criteria:

    1.    Is this individual totally disabled? Total Disability is defined by the Fund: "as a result of illness or injury, you are <u>unable to work in any capacity</u>"

    2.    If yes, is this Disability Permanent?

    3.    Should this patient be reviewed annually?

(Napier Affidavit par. 21, Exhibit "I")

22. By report dated June 21, 2002, Dr. Marchisello summarized his examination of Dedivanovic. Dr. Marchisello described Dedivanovic as being "poorly cooperative during the examination" and

"vague in her responses." Dr. Marchisello described his impression of Dedivanovic, summarized the physical examination, and set forth his clinical diagnoses and prognosis. He then addressed the issue of disability stating:

> The disability in this claimant in my opinion is of a permanent nature. The impairments are structural in nature and are irreversible. Her disability is partial in magnitude. It is moderate in degree.
> This claimant is not totally disabled in my opinion and is eligible for gainful employment.

(Napier Affidavit par. 22, Exhibit "J").

23.     On September 12, 2002 the Health Fund prepared a Claim Review summarizing its position as to non-eligibility. (Exhibit "K" to Napier Affidavit)

24.     By letter dated September 12, 2002, Dedivanovic was advised that her application was denied. The letter stated:

> Dear Angela Dedivanovic:
>
> Your application for benefits due to Total/Permanent Disability has been rejected.
>
> Section 4.11 of the Pension Plan description, provides that a Participant is totally and permanently disabled if, on the basis of medical evidence, he or she is found to be totally and permanently <u>unable,</u> as a result of bodily injury or disease, <u>to engage in any further employment or gainful pursuit.</u>
>
> The Fund has determined that your condition does not meet the above described eligibility standard, based upon the following medical information:-
> The report of Dr. Machisello who examined you on June 13, 2002, stated that based on clinical testing and observation, as well as review of your medical records, you are not considered totally disabled.
> Copy of the above referenced report, as well as all other documents pertinent to your claim, will be sent to you upon request.
>
> You or your authorized representative are entitled to review of the Fund's decision, upon **written** request. Because the decision was based on the conclusions of qualified medical experts that you are not totally disabled,

we are unable to recommend the submission of any specific material or information to perfect your claim. Any additional medical information that you can submit, however, will be welcomed and considered by the Fund Trustees. Specific information regarding the procedure to be followed for review by the Trustees is set forth below:

**RIGHT OF APPEAL:** A participant, whose application for benefits under this plan has been denied in whole or in part, is provided with adequate notice in writing, setting forth the specific reasons for such denial, and shall have the right to <u>appeal the decision by written request files with the Trustees within 180 days</u> after receipt of such notice. The appeal shall be considered by a person or committee designated by the Trustees, at the sole discretion of the Trustees. Its decision shall be communicated to the claimant within <u>45</u> days after receipt of all pertinent evidence.

(Exhibit "L" to Napier Affidavit)

25.   By letter dated September 24, 2002, Dedivanovic appealed the denial of her application. (Exhibit "M" to Napier Affidavit)

26.   Dedivanovic supplemented the record by submitting the following additional documents (collectively Exhibit "N" to Napier Affidavit):

- a) November 4, 2000 MRI from HPS Medical.

- b) November 12, 2002 Report from Dr. John L. Xethalis.

- c) State of New York Workers Compensation attending doctor's report of Dr. Donald I. Goldman, dated September 30, 2002

- d) March 12, 2003 record Lenox Hell Hospital.

- e) August 8, 2002 MRI of the right knee, August 12 MRI of the paranasal sinuses, August 24, 2002 MRI of the right shoulder, September 3, 2002 MRI of the left knee, September 9, 2002 MRI of the brain, September 16, 2002 MRI of the I.A.C. all from AK Diagnostic Imaging P.C.

27.     On November 15, 2002, the Fund prepared a Total and Permanent Disability Certification form. (Exhibit "O" to Napier Affidavit).

28.     A report was prepared for the Trustees dated November 25, 2002, summarizing the record. (Exhibit "P" to Napier Affidavit)

29.     A report dated December dated December 18, 2002 was prepared by the Funds' medical advisor, Dr. Norman Kuperstien. Dr. Kuperstien was employed by the Fund as a consultant for medical issues, including medical determinations as to disabilities. Dr. Kuperstien was paid the same fee regardless of his determinations and was not on any form of incentive program. His function was to review the application records and make recommendations to the Trustees. The Trustees were not bound by his recommendations. Dr. Kuperstien's report summarized the record documents, including the report of the independent medical examiner. Dr. Kuperstien recommended that the rejection be upheld. (Napier affidavit par. 29, and Exhibit "Q").

30.     By letter dated December 23, 2002, Dedivanovic was advised that her appeal had been received and would be processed. (Exhibit "R" to Napier Affidavit). In connection with the appeal, the Fund generated certain computer retained information which was placed in the file (Exhibit "S" to Napier Affidavit).

31.     By letter dated April 3, 2003 Dedivanovic was advised that her appeal had been denied. The letter stated:

> Dear Ms, Dedivanovic:
>
> The appeal of the decision related to your claim for Disability Pension benefits due to total and permanent disability has been denied by the Trustees' Appeals Committee.
>
> Section 4.11 of the Pension Plan document provides that a participant is totally and permanently disabled if, on the basis of medical evidence satisfactory to the Trustees, he or she is found to have become, while

> working in covered employment, totally and permanently unable, as a result of bodily injury or disease, to engage in any further employment or gainful pursuit.
>
> The Appeals Committee has determined that your condition does not meet the above described eligibility standard based on the following medical information: Dr. Lambrakis' statement of disability dated 3/10/02; additional evaluation reports from Dr. Lambrakis; a neurologic consultation report from Dr. Lerner dated 3/13/02; MRI Scans of the Lumbar Spine, Right and Left Knees, Right Shoulder, Cervical Spine and Paranasal Sinuses; the additional medical documentation submitted at the time your appeal was heard including Dr. Xethalis' report dated 3/12/03; and Dr. Marchisello's independent disability evaluation dated 6/12/03 wherein he concluded that you were not totally disabled for gainful employment: as well as the entire file record.
>
> Copies of the above referenced reports, as well as all other documents relevant to your claim, will be sent to you upon request, free or charge.
>
> Please be aware that you have the right to bring a civil action in a court of law challenging the decision pursuant to Section 502 (a) of the Employee Retirement Income Security Act (ERISA).
>
> For further assistance, please contact our office at (212) 388-3471/80.

(Exhibit "T" to Napier Affidavit)

32.  By letter dated May 13, 2003, counsel for Dedivanovic asked that the decision of the Appeals Committee be reconsidered. (Exhibit "U" to Napier Affidavit). By letter dated May 22, 2003, counsel for the Fund responded to the effect that the decision was final and not subject to further review. (Exhibit "V" to Napier affidavit)

33.  While this case was pending in Court, the Second Circuit Court of Appeals issued a decision in <u>Demirovic v. Building Service 32BJ Pension Fund.</u> As a result, the Fund implemented a procedure for vocational review of claims where applicants for disability benefits are found by a physician as being capable of performing sedentary work. (Napier Affidavit par. 33)

34.  Accordingly, by letter dated April 12, 2007 from Fund counsel to Dedivanovic's counsel,

Dedivanovic was asked to complete and return a vocational questionnaire. (Exhibit "W" to Napier Affidavit). Under cover letter dated October 3, 2007 the questionnaire was returned (Exhibit "X" to Napier Affidavit).

35. By letter dated October 11, 2007, Dedivanovic and her attorney were advised that the appeal would be heard, not at the next scheduled hearing date, but rather on the following date because all time slots had been filled. Dedivanovic was provided an opportunity to submit additional documentation and evidence. The letter also advised that Dedivanovic and/or her representative could appear at the hearing. Dedivanovic was offered the option of having her case decided at the December 5, meeting if she did not seek to appear to argue here case. (Napier Affidavit par. 35, Exhibit "Y").

36. The Fund submitted the case for vocational review by Apex Rehab Management ("Apex"). In this matter Apex was provided the full medical evidence in the Fund's files. In a report dated November 7, 2007, Apex specifically referred to the Social Security Administration's finding of disability and Dr. Marchisello's finding that Dedivanovic was not totally disabled and eligible for gainful employment, noting that the disability was partial in magnitude and moderate in degree. Apex then considered Dedivanovic's educational background and work history. Using a transferable skills analysis, Apex identified several occupations for which Dedivanovic possessed transferable skills, including Department of Labor identified occupations as "unskilled". Apex then identified three examples of jobs, available in the regional labor market, assembler of jewelry, food checker and assembler of notions (Napier Affidavit par. 36, Exhibit "Z").

37. An Administrative Case Review was prepared for the Trustees. (Exhibit "AA" to Napier Affidavit).

38. By decision dated December 10, 2007, the Trustees again denied the appeal. The denial

reads:

> Dear Angela Dedivanovic:
>
> On December 5, 2007 the Trustees' Appeals Committee heard your appeal regarding denial of your application for Disability Pension benefits from the Building Service 32BJ Pension Fund (Pension Fund)
>
> Eligibility for Disability Pension Benefits is described in Section 4.09 of the Building Service 32BJ Pension Fund Plan Document (Plan Document). To be eligible for Disability Pension Benefits a participant must 1) be totally and permanently disabled (as defined in Section 4.11 of the Plan Document); 2) have at least 120 months of Service Credits; and 3) have become totally and permanently disabled while working in covered employment.
>
> Section 4.11 of the Plan Document provides that a participant is totally and permanently disabled if, on the basis of the medical evidence satisfactory to the Trustees, he or she is found to have become, while working in covered employment, totally and permanently unable, as a result of bodily injury of disease, to engage in a any further employment or gainful pursuit.
>
> The Appeals Committee has determined that your condition does not meet the above-described eligibility standard based on the following medical and vocation information: Dr. Marchisello's report of June 21, 2002 wherein he state you have a partial disability and are not totally disabled and Mark Ramnauth's Employability Evaluation Report of November 2, 2007 wherein he states, you have transferable skills and residual functional capabilities necessary to perform several occupations. In addition, the Committee reviewed the medical records you submitted, as well as the entire file.
>
> For this reason, the Appeals Committee has denied your appeal. While the Appeals Committee is sympathetic to your situation, please be advised that it does not have the authority to alter the terms of the plan.
>
> Please understand that the decision of the Trustees is final. If you disagree with this decision, you have the right to bring a civil action in a court of law challenging the decision pursuant to Section 502(a) of the Employee Retirement Income Security Act (ERISA). However, no lawsuit may be started more than three years after the date on which the appeal was denied. Copies of all documents relevant to your claim will be sent to you upon request, free of charge.

(Exhibit "BB" to Napier Affidavit)

Dated: New York, New York
March 5, 2010

                                      Raab, Sturm & Ganchrow, LLP.

                                      By: _____
                                          Ira A. Sturm (IS-2042)
                                      Attorneys for the Defendant
                                      317 Madison Avenue, Suite 1708
                                      New York, New York 10017
                                           Tel: 212-683-6699